UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

AMERICAN FREEDOM DEFENSE INITIATIVE et al.,  :

                             Plaintiffs,   :

                                                 :

                    -v-                          :

                                               :

METROPOLITAN TRANSPORTATION AUTHORITY  :
et al.,                                          :

                                               :

                           Defendants.    :

                                               :
------------------------------------------------------------------------X

11 Civ. 6774 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In an Opinion and Order issued July 20, 2012, the Court granted the motion by plaintiff

American Freedom Defense Initiative ("AFDI") for a preliminary injunction, enjoining

defendant Metropolitan Transportation Authority ("MTA") from enforcing its "no-demeaning"

advertising standard. The Court stayed the effect of that Order for 30 days and has since

extended the stay until today. This decision addresses (1) whether to convert the preliminary

injunction entered by the Court into a permanent injunction; (2) the other relief sought by AFDI,

including declaratory relief, nominal monetary damages, and attorney's fees; and (3) MTA's

request for a stay of the injunction pending appeal.

For the reasons below, the Court (1) enters a permanent injunction, enjoining MTA from

enforcing the no-demeaning advertising standard as presently written; (2) issues a declaratory

judgment that the no-demeaning standard as presently written is inconsistent with the First

Amendment; (3) awards AFDI $1 in nominal damages; (4) defers ruling on AFDI's claims for

attorney's fees pending resolution of MTA's appeal; and (5) denies MTA's request for a stay of

the injunction pending appeal, but extends the present stay of its Order until September 12, 2012,

to permit MTA to appeal on an emergency basis to the Second Circuit the Court's denial of a

stay pending appeal, and to give MTA a final opportunity to put in place an alternative or interim

regulation.

I.      **Background**

        **A. The July 20 Decision**

        The facts relevant to this controversy are set out in detail in the Court's Opinion and

Order of July 20, 2012. *See* Dkt. 29 (the "July 20 Decision"). The Court assumes familiarity

with that decision.

        In the July 20 Decision, the Court held that MTA's no-demeaning standard violates the

First Amendment, because, as presently written, it is explicitly content-based: The standard

proscribes some, but not all, demeaning ads, depending whether the individual or group

demeaned by a particular ad falls into one of the "specific disfavored" categories (*e.g.*, race,

nationality, gender, religion, disability, sexual orientation) identified in that standard. *See R.A.V.*

*v. City of St. Paul*, 505 U.S. 377, 391 (1992). In the absence of any justification for this content-

based restriction on speech—let alone a showing that this restriction was narrowly tailored to

serve a compelling government interest, as required where the restriction affects a designated

public forum, *see Pleasant Grove City, UT v. Summum*, 555 U.S. 460, 469 (2009)—the Court

held that the no-demeaning standard is, clearly, unconstitutional. *See* July 20 Decision 28–33.

        As noted in the July 20 Decision, MTA's standard is all the more problematic because it

discriminates based upon content within the area of political speech. That circumstance was not

present in *R.A.V. R.A.V.* involved similar facial content discrimination, but the ordinance at issue

applied only to inherently proscribable hate-speech. *See id.* at 30–31. The Court accordingly

granted a preliminary injunction barring MTA from enforcing that standard. *Id.* at 35.

In the July 20 Decision, the Court also recognized that MTA has a legitimate interest in holding ad space on the sides of public buses to a standard of civility, and ensuring that ads on public buses are not used as a tool for abuse, disparagement, and division. *See id.* at 30–31. Accordingly, the Court structured its Order to give MTA ample opportunity to review and revise its restrictions, and to put in place new, or interim, regulations. Specifically, the Court, in the public interest, stayed the effect of its preliminary injunction for 30 days, until August 19, 2012. *Id.* at 35. Without such a stay, the Court recognized, its injunction would have left a regulatory void, potentially obliging MTA to permit demeaning and abusive ads to appear immediately on exteriors of city buses, while MTA considered new regulations. The 30-day period was chosen based on MTA's request, at the hearing in this case, for a stay of up to 30 days in the event the no-demeaning standard was held invalid. Hr'g Tr. 123, Apr. 3, 2012.

In the July 20 Decision, the Court also scheduled a conference for August 29, 2012, to discuss remaining issues in the litigation.

### B.  Subsequent Developments

In a letter dated August 6, 2012, MTA asked the Court to extend the 30-day stay until at least September 27, 2012. MTA stated that although its Board generally meets monthly, it did not plan to meet in August, and its next scheduled meeting was on September 27, 2012. *See* Dkt. 31 (the "MTA August 6 Letter"). At the September 27, 2012 Board meeting, MTA stated, the Board would be briefed on potential courses of action, including whether to appeal the Court's ruling, and whether to put in place alternative advertising standards, and what the financial impact on MTA would be of potential new standards. MTA August 6 Letter 2. The same day, MTA filed a notice of appeal as to the July 20 Decision. *See* Dkt. 30 (notice of appeal).

In an Order issued the same day, the Court extended the stay until the scheduled August

29, 2012 court conference, *i.e.*, by 10 days from the original expiration date. *See* Dkt. 32 (the

"August 6 Order"). In the August 6 Order, the Court stated that it was open to extending that

stay briefly thereafter to permit MTA to consider alternative regulations applicable to demeaning

bus ads. However, the Court declined to extend the stay until the September 27, 2012 MTA

Board meeting, which would entail adding four weeks to the existing stay. That was because

MTA's existing standard violated the First Amendment, and, under uniform case law, the more

protracted a stay keeping in place a constitutionally defective standard, the more severe the

continuing First Amendment injury. *See* August 6 Order 2 (citing *New York Magazine v. Metro.*

*Transp. Auth.*, 136 F.3d 123, 127 (2d Cir. 1998) ("The loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable harm.")).

The Court, accordingly, encouraged MTA to move up the date of its Board meeting to

respect the First Amendment interests at stake:

> [I]f MTA's board is seeking a stay to permit such consideration, it is not
> reasonable for the Board to propose to wait 69 days (*i.e.*, until September 27) to
> meet to address this subject. That is particularly so given that the Court's
> questions and observations at the April 3, 2012 hearing in this case should have
> put the MTA amply on notice that its current regulation was potentially deficient,
> including on the ground that it was impermissibly content-based; and given that
> the Court specifically asked MTA at that hearing how much time it would need to
> consider its options in the event the Court ruled against it, and MTA responded by
> proposing, at the outside, 30 days. Hr'g Tr. 123, Apr. 3, 2012. The Court
> encourages MTA, in advance of the August 29, 2012 conference, to expedite
> substantially its Board meeting on the subject.

August 6 Order 2.

On August 24, 2012, the Court received a joint letter from counsel. *See* Dkt. 36 (the

"Joint August 24 Letter"). The letter, which the July 20 Decision had directed be filed, *see* July

20 Decision 35, set forth the parties' respective views on next steps in the litigation, including

4

whether the Court should convert its preliminary injunction to a permanent injunction, and when the Court should address the other requests for relief in AFDI's Complaint, such as for attorney's fees. *Id.* at 1–4.

However, despite the Court's having encouraged it to do so in the August 6 Order, MTA did not indicate that it had expedited, from September 27, 2012, its Board's review of potential alternative regulations. Rather, in the Joint August 24 Letter, MTA stated that, unless the existing stay was extended as proposed in its August 6, 2012 letter (until September 27, 2012), MTA "necessarily will comply with the terms of the Preliminary Injunction"—*i.e.*, not enforce the no-demeaning regulation—until it had put in place new regulations. *Id.* at 2. MTA stated that it had filed a notice of appeal as to the preliminary injunction, and planned to pursue that appeal unless and until obviated by an intervening modification of its advertising standards. *Id.* at 3.

On August 29, 2012, the Court held argument on MTA's application for a continuing stay and as to the remaining relief sought in AFDI's Complaint.

## II.   Discussion

### A. Entry of a Permanent Injunction

The first issue before the Court is whether to convert the existing preliminary injunction into a permanent injunction. The parties agree that the Court has received all evidence relevant to the issues in this case and that no further discovery is needed. *See* Joint August 24 Letter 2 (statement by AFDI); *id.* (statement by MTA). On that basis, AFDI urges the Court to enter a permanent injunction enjoining enforcement of MTA's no-demeaning standard as presently written. *Id.* (statement by AFDI).

The Court agrees that a permanent injunction is appropriate. "The party requesting permanent injunctive relief must demonstrate (1) irreparable harm (here, a constitutional violation) and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012). Thus, the standard for a permanent injunction is essentially the same as for a preliminary injunction, the difference being that the plaintiff must show actual success rather than a likelihood of success. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). As the parties agree, there is no further evidence to be received relevant to whether the no-demeaning standard, as presently written, violates the First Amendment. Further, the Court has already held, on the full evidentiary record, that that standard is unconstitutional, and MTA has not since pointed to evidence or case law overlooked by the Court that would cast this ruling into doubt. Under these circumstances, it is appropriate to enter a permanent injunction, as to the no-demeaning standard as presently written. *See Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 400 F. Supp. 2d 581, 589–90 (S.D.N.Y. 2005), *vacated on other grounds*, 492 F.3d 89 (2d Cir. 2007) (converting preliminary injunction to permanent injunction where record is substantially the same at each stage).

MTA opposes entry of a permanent injunction, on the ground that MTA intends to review and revisit its advertising standards. *See* Joint August 24 Letter 2–3 (statement of MTA). However, any revision to MTA's existing standards that may emerge from MTA's coming review will not affect the constitutionality of the *present* no-demeaning standard. In essence, MTA asks the Court to defer final judgment as to a ripe controversy—the constitutionality of the present no-demeaning standard—because at some point a court may need to consider the

constitutionality of an as-yet undetermined revision to MTA's standards.[1] This Court's role, however, is limited to resolving ripe, concrete cases and controversies. U.S. CONST., art. III, § 2; *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Abbott Labs. v. Gardner*, 387 U.S. 137, 148–49 (1967) ("[T]he basic rationale [of ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.").

The controversy presented by AFDI's Complaint is limited to whether the *present* no-demeaning standard, under which MTA rejected the AFDI Ad, is constitutional. As AFDI recognizes, were MTA to modify its current regulations, that may vitiate the current controversy, or require AFDI to submit its Ad anew for review within MTA. *See* Joint August 24 Letter 3 (statement of AFDI) (stating that if MTA were to modify its standards, that might result in AFDI's modifying the Ad, resubmitting the existing Ad for review under MTA's new standards, and, were the MTA to reject the Ad under the new standards, filing a new Complaint); *id.* at 4 (statement of AFDI) ("If the MTA modifies its advertising standards in the future, it may or may not result in litigation. It is just too premature and speculative to know."). And if a legal challenge to new regulations is brought, the issues before the Court may differ materially from those presented by the current Complaint: New regulations may, for example, change the character of the advertising forum and/or the rules applicable to AFDI's Ad, and thereby transform the First Amendment analysis. *See, e.g., Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 90 (1st Cir. 2004) (upholding standard that prohibited, without limitation, transit ads that

---

[1] In resisting a permanent injunction, MTA appears to be asking the Court to keep this lawsuit open so as to permit this Court to judge the constitutionality of new advertising standards that the MTA Board may later apply to the AFDI Ad, to the extent that AFDI continues to seek to run that ad after new standards are instituted. *See* Joint August 24 Letter 2–3 (statement of MTA). But it is premature now to assess whether application of a hypothetical new standard to the same AFDI Ad would properly be treated as part of this lawsuit it, or, if challenged as part of a separate lawsuit, consolidated with it or treated as related.

"demean or disparage" an individual or group of individuals, where overall usage rules of the advertising space led court to hold it to be a non-public, rather than a designated public, forum).

The Court, accordingly, will convert the preliminary injunction into a permanent one invalidating the MTA's *present* no-demeaning standard.

### B. Other Relief Sought by AFDI

AFDI also seeks declaratory relief: a declaration that the present no-demeaning standard violates the First Amendment. *See* Compl. 9. In exercising its discretion to grant declaratory relief, the Court considers "'(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved' and '(2) whether a judgment would finalize the controversy and offer relief from uncertainty.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)). At the August 29, 2012 conference, MTA conceded that, in light of the July 20 Decision, it is appropriate to enter declaratory relief. Because such a declaration will underscore that, for reasons set forth in the July 20 Decision, the no-demeaning policy is unconstitutional, such relief is appropriate and will be granted.

AFDI also seeks nominal monetary damages. *See* Compl. 10. "[A] litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of compensable injury." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999) (citing *Carey v. Piphus*, 435 U.S. 247, 253–67 (1978)). At the August 29, 2012 conference, the parties agreed that $1 in nominal damages is appropriate for the violation found by the Court. The Court will order that relief.

AFDI, finally, seeks reasonable attorney's fees, costs and expenses, pursuant to 42 U.S.C. § 1988(b). Such an award is generally appropriate where a plaintiff has prevailed on the claim

8

that defendant violated his constitutional rights. *See Orchano v. Advanced Recovery, Inc.*, 107

F.3d 94, 97 (2d Cir. 1997) ("The legislative history of § 1988 makes clear that a plaintiff who

has prevailed on a claim under § 1983 should ordinarily recover an attorney's fee unless special

circumstances would render such an award unjust." (citation omitted)).  However, in the interests

of judicial economy, and with the concurrence of both parties, the Court will defer ruling on this

application until the resolution of MTA's appeal, which may bear on AFDI's entitlement to fees.

*See Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 327 n.30

(W.D.N.Y. 2003); *see also Leibovitz v. Paramount Pictures Corp.*, No. 94-cv-9144, 1997 WL

542560, at \*1 (S.D.N.Y. Sept. 3, 1997) (deferring decision on attorney's fees pending appeal).

### C. Stay Pending Appeal

The final issue pending before the Court is whether to enter a stay pending appeal.  In

determining whether to issue the stay, the Court "consider[s] the following factors: '(1) whether

the stay applicant has made a strong showing that he is likely to succeed on the merits; (2)

whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

will substantially injure the other parties interested in the proceeding; and (4) where the public

interest lies.'" *S.E.C. v. Citigroup Global Markets, Inc.*, 673 F.3d 158, 162–63 (2d Cir. 2012)

(quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The degree of success that an applicant

for a stay must show varies according to the Court's assessment of the other stay factors,

particularly irreparable injury. *See Thapa v. Gonzales*, 460 F.3d 323, 335 (2d Cir. 2006); *see*

*also Mohammed v. Reno*, 309 F.3d 95, 101 n.6 (2d Cir. 2003) ("The probability of success that

must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will

suffer absent the stay." (citation omitted)).

These factors do not favor a stay.  First, MTA has not shown a likelihood of success on appeal.  MTA has not argued that its current, content-based standard is narrowly tailored to advance a compelling government interest.  The Court understands that MTA, instead, intends to ask the Second Circuit to reconsider its ruling in *New York Magazine*, supra, that the advertising space on the exterior of public buses is a designated public forum, and to urge instead that it is a non-public forum.  But even assuming the Second Circuit were to conclude that this advertising space is a non-public forum, a content-based restriction on speech in such a forum must still be reasonable.  *See Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *see also* July 20 Decision 20 (collecting cases).

At the April 3 hearing and in its briefing in this case, MTA did not articulate any reason for discriminating between demeaning ads on the basis of their content.  *See R.A.V.*, 505 U.S. at 395 (rejecting as inadequate the proffered justification for a content-based speech restriction, which protected certain categories of persons; justification was that the restriction helped to ensure the basic human rights of members of groups that have been historically subject to discrimination).[2]  And MTA's content discrimination is particularly unlikely to survive reasonableness review given that an across-the-board ban on demeaning speech would appear to fully achieve MTA's goals of preserving civility and decorum.  *See Make The Road by Walking, Inc. v. Turner*, 378 F.3d 133, 149 (2d Cir. 2004) (existence of less restrictive prohibition on speech is relevant to reasonableness of speech restrictions).  In any event, the absence of an

---

[2] At the August 29, 2012 conference, MTA's counsel surmised that, in 1997, when MTA drafted the no-demeaning regulation to apply only to the nine discrete categories of individuals or groups, it did so based on a belief that demeaning ads were most likely to target such persons. However, MTA acknowledged that demeaning transit ads directed at other persons, including those of the sort posited by the Court in the July 20 Decision, are also against the public interest. MTA's counsel further stated it is possible that "not tremendous thought" had been given in 1997 to whether MTA's no-demeaning regulation should apply to all, or only some, categories of individuals and groups.

articulated reason is the essence of unreasonableness. *See Shaw's Supermarkets, Inc. v. NLRB*, 884 F.2d 34, 36–37 (1st Cir. 1989) (Breyer, J.); *cf. Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287, 314 (1998) (finding discriminatory treatment of non-residents unreasonable where state failed to offer any substantial justification for the distinction).

As to the irreparable harm inquiry, it favors AFDI. The infringement of First Amendment freedoms, "'for even minimal periods of time, unquestionably constitutes irreparable harm.'" *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Indeed, having granted a preliminary injunction based upon a finding of irreparable harm to plaintiffs, it would be "logically inconsistent" to then find that plaintiffs would not suffer irreparable harm were the injunction stayed pending appeal. *Rodriguez v. DeBuono*, 175 F.3d 227, 234–35 (2d Cir. 1998).

As to the public interest, there is, as MTA has noted and the Court has credited, a public interest in not allowing the exteriors of public buses to be used as media for disparagement and abuse. *See* July 20 Decision 32–34. In recognition of this interest, the Court has already given MTA substantial time (40 days as of the date of this Order) to put in place an interim or new regulation to guard against such harms, so that the Court's invalidation of the current no-demeaning standard does not leave a regulatory void to be exploited. The Court has also indicated, in its August 6 Order, that it would be open to an additional brief stay beyond today to permit MTA to address this public policy issue. However, in its August 6 Order, the Court advised MTA that—because First Amendment rights are at stake—it is not reasonable for MTA's Board to ask the Court to stay its order until MTA's next scheduled Board meeting, on September 27, when MTA has proposed to first take up this issue. The Court instead encouraged

11

MTA, if it is seeking a stay to permit it to put in a place an alternative regulation, to expedite substantially its consideration of the issue.

Notwithstanding its professed concerns about the injury to its riders and itself presented by demeaning and abusive transit ads, MTA has declined to expedite its consideration of this issue. At the August 29, 2012 hearing, MTA's general counsel, James B. Henly, Esq., represented that MTA's executives, and a subset of its Board (the Finance Committee) have decided not to schedule an MTA Board meeting in August, or, for that matter, any time in September earlier than September 27, to consider interim or new regulations with regard to demeaning speech. Mr. Henly also represented that there is no assurance that, when it meets on September 27, the MTA Board will agree to put in place an interim or new regulation. Mr. Henly represented that the decision not to present this issue to MTA's Board until September 27 was a considered one, which, he stated, reflected the complexity of the issues presented. Mr. Henly represented that MTA's leadership and the Finance Committee of its Board made that scheduling decision mindful of the Court's August 6 Order, and fully aware that if the existing stay expires before September 27, MTA will not have in place any regulation guarding against demeaning or abusive bus ads. Mr. Henley acknowledged that in the absence of such a regulation, MTA would be obliged to allow such an ad to run (unless it was barred by a different advertising standard).

It is for MTA, balancing its priorities and scheduling sensitivities, and not the Court, to decide when MTA's Board should take up the issue of whether an interim or new regulation should be put in place with respect to demeaning speech. The Court, however, is charged with balancing the factors germane to the granting of a stay. In the Court's assessment, although the public interest in allowing MTA to design a corrected regulation sufficient to prevent the

exteriors of buses from being used as instruments of abuse justified a stay of some duration, the public interest is not served by, and does not justify, granting an indefinite stay, given the important First Amendment interests at stake. Nor does it justify the 69-day stay that MTA seeks before its Board will first take up (let alone resolve) this issue. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("Th[e] effect of the passage of time upon Plaintiffs' interests also has a bearing on the public interest."); *see also Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("[T]he public as a whole has a significant interest in ensuring . . . protection of First Amendment liberties."). The Court, accordingly, denies MTA's request for a stay of its injunction until September 27, 2012.

However, in order to protect MTA's ability to appeal the Court's denial of a stay pending appeal, the Court will extend the current stay of its Order enjoining MTA from enforcing the no-demeaning regulation as presently written until Wednesday, September 12, 2012.[3] MTA is also at liberty to use this final stay to put in place an interim or new regulation. Absent an order from the Second Circuit, however, this stay will expire at midnight on September 12, 2012.

## CONCLUSION

For the reasons discussed above:

1.  AFDI's motion for a permanent injunction enjoining the enforcement of MTA's no-demeaning standard as presently written is GRANTED.

2.  MTA's motion for a stay of this Order pending the resolution of its appeal is DENIED. However, in order to enable MTA to appeal to the Second Circuit the Court's denial of a stay pending appeal, the Court will extend the current stay of its

---

[3] The motions panel of the Second Circuit is scheduled to sit on the previous day, September 11, 2012.

Order enjoining MTA from enforcing the no-demeaning regulation as presently written until Wednesday, September 12, 2012.  Absent an order from the Second Circuit, however, this stay will expire at midnight on September 12, 2012.

3. AFDI's motion for a declaratory judgment that the no-demeaning standard as presently written violates the First Amendment is GRANTED.

4. AFDI's motion for $1 in nominal damages for the violation of its First Amendment rights is GRANTED.

5. The Court's consideration of AFDI's application for reasonable attorney's fees, costs and expenses, pursuant to 42 U.S.C. § 1988(b) is DEFERRED pending the resolution of MTA's appeal.

The Court directs MTA's general counsel to furnish this Opinion and Order, and also the Court's July 20 Decision, forthwith to the MTA's full Board, so as to ensure that the Board is fully informed of the potential consequences of MTA's decision to defer consideration of an alternative regulation or regulations until after the current stay has expired.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: August 29, 2012
New York, New York